## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael D. Cederberg, David Cederberg, and Bruce Harrell, <br><br> Plaintiffs, <br><br> v. <br><br> Brian Harrell, and Farmers New World Life Insurance Company, <br><br> Defendants. | Civil No._____ <br><br><br> **COMPLAINT** |

**COME NOW PLAINTIFFS MICHAEL D. CEDERBERG, DAVID CEDERBERG, AND BRUCE HARRELL** by and through their undersigned counsel, as and for their Complaint, states and alleges as follows:

1.      Plaintiff Michael Cederberg ("Cederberg") is a Wisconsin resident, residing at 7246 County Road B, Siren, WI 54872.

2.      Plaintiff David Cederberg ("David") is a Wisconsin resident, residing at 7087 County Road B, Siren WI 54872.

3.      Plaintiff Bruce Harrell ("Bruce") is an Indiana resident, residing at 8482 N 325 W, Fountaintown, Indiana, 46130.

4.      Defendant Brian Harrell ("Harrell") is a Minnesota resident, residing at 4500 Whitetail Way #201, Eagan, MN 55123.

5.      Defendant Farmers New World Life Insurance Company ("Farmers") is a Washington corporation with a registered office address of 3003 77th Avenue SE, Mercer Island, WA.

6.      J.C., Cederberg's daughter, is a minor and a Wisconsin resident, residing at 7246 County Road B, Siren, WI 54872.

7.     G.C., Cederberg's daughter, is a minor and a Wisconsin resident, residing at 7246 County Road B, Siren, WI 54872.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction of this action under 28 U.S.C. § 1332.

9.     Venue is proper under 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

10.    Cederberg is the surviving spouse of Georgia L. Cederberg ("Georgia").

11.    J.C. and G.C. are the minor children of Georgia and Cederberg.

12.    David is Georgia's step-son and Cederberg's son.

13.    Bruce is one of Georgia's brothers.

14.    Georgia passed away on October 1, 2018.

15.    At the time of her death, Georgia was a resident of Wisconsin.

16.    Georgia had a policy of life insurance with Defendant Farmers which provided for a death benefit of $500,000 (the "Policy").

17.    When Georgia initially took the Policy in 2003, J.C. had just been born.

18.    Georgia and Cederberg had named Harrell, one of Georgia's brothers, as J.C.'s godfather.

19.    Georgia purchased the policy to provide for J.C. in the event Georgia and Cederberg unexpectedly died.

20.    When she initially took the Policy in 2003, Georgia listed Harrell, J.C.'s godfather, as the primary beneficiary.

21.    J.C., a minor, was listed as a contingent beneficiary under the Policy.

22.    Georgia listed Harrell as the primary beneficiary because J.C. was a minor.

2

23.     G.C. had not yet been born when Georgia originally took the Policy in 2003.

24.     Georgia and Cederberg understood that Harrell was listed as the primary beneficiary solely for the purpose of ensuring J.C., Georgia and Cederberg's only child at the time, would be provided for should Georgia and Cederberg unexpectedly die.

25.     Georgia retained the right to modify her beneficiary designation under the Policy and under all applicable law.

26.     Over the course of the last fifteen years Georgia's relationship with Harrell deteriorated substantially due, in part, to Harrell's failure to satisfy debts to Georgia, Cederberg, and other family members.

27.     Georgia and Cederberg moved to Wisconsin on or about 2011.

28.     Prior to her death, Georgia intended to have all her life insurance proceeds pass for the benefit of Cederberg, J.C., G.C., and David.

29.     Georgia expressed her intent to have all her life insurance proceeds pass to Cederberg, J.C., G.C., and David, in writing and orally.

30.     Specifically, Georgia had discussions with her daughter-in-law, Alicia Cederberg ("Alicia"), when Alicia accompanies Georgia to medical appointments related to Georgia's cancer treatment.

31.     During these trips, Georgia and Alicia discussed Georgia's intent for the life insurance proceeds to go to Cederberg.

32.     Specifically, Georgia told Alicia that she expected all her life insurance proceeds to go to Cederberg, and to Georgia's daughters, J.C. and G.C.  Georgia informed Alicia that the life insurance proceeds were to be used to pay off the debt on her and Cederberg's home and other bills so Cederberg and Georgia's children would not have to worry about the debts going

forward.

33.     Georgia also informed Alicia that a portion of the life insurance proceeds were to be set aside to pay for her daughters' education, to pay for their weddings, and to provide cash gifts should they graduate from college.

34.     Georgia never mentioned Harrell as someone she wished to receive benefits.

35.     Alicia advised Georgia that she should document her wishes.

36.     Georgia memorialized her wishes in her cellphone notes.

37.     Following her passing, Alicia found Georgia's notes on her phone.  *See* Attached **Exhibit A**.

38.     Georgia's notes demonstrate her intent for Cederberg and her children to receive her life insurance proceeds.

39.     While undergoing cancer treatment, Georgia also had discussions with Bruce about her intent for her life insurance proceeds.

40.     Georgia's first discussion with Bruce occurred in December 2017, wherein Georgia told Bruce that Cederberg, J.C., and G.C. would be taken care if her health deteriorated because she had two life insurance policies.

41.     Georgia requested Bruce serve as executor of her estate because she was concerned Cederberg would need assistance managing the life insurance proceeds.

42.     Around July or August 2018, Bruce had another conversation with Georgia regarding her finances and end-of-life planning.

43.     Georgia was considering different cancer treatments and was considering using her 401k funds to finance the treatments.

44.     Georgia told Bruce that Cederberg, J.C., and G.C. would not need to rely on her

401k because they would benefit from the life insurance policies.

45.     Approximately three weeks prior to her death, Georgia again spoke with Bruce and informed him she had written down her wishes should she pass away.

46.     Georgia again asked Bruce to assist Cederberg in handling the life insurance proceeds.

47.     Georgia told Bruce that she wanted the life insurance proceeds to go to satisfy her and Cederberg's home mortgage and to pay bills related to their trucking company, that some money was to be used for her daughters' education, wedding, and college graduation gifts; that David was to receive a cash gift, and the remainder was to be invested for Cederberg, J.C., and G.C.'s benefit.

48.     At no point during any discussion about her end-of-life planning did Georgia express her desire for Harrell to receive proceeds from the life insurance.

49.     As shown in Georgia's notes, she did not intend for Harrell to benefit from the Policy.

50.     Rather, Georgia's intent was for the life insurance proceeds to benefit Cederberg, J.C., G.C., and David.

51.     Following Georgia's death, Bruce learned that Harrell was listed as a beneficiary on one of Georgia's life insurance policies.

52.     Bruce contacted Harrell, told Harrell that Georgia had made a mistake and that Harrell should agree to assign the policy or its proceeds to Cederberg.

53.     Initially Harrell agreed that he was not the intended beneficiary and agreed to assign the proceeds.

54.     But after Harrell retained counsel, he claimed that it was Georgia's intent to

benefit Harrell.  Despite requests that Harrell agree to assign the life insurance proceeds due under the Policy to Cederberg, Harrell refuses to assign the proceeds.

## COUNT I—DECLARATORY JUDGMENT

55.     Plaintiffs restate and re-allege all allegations in Paragraphs 1 through 54.

56.     Georgia retained the right to change the beneficiary named in the Policy.

57.     Georgia intended to change the beneficiary under the Policy.

58.     Georgia took affirmative action unequivocally indicating her intent to change the beneficiary under the Policy from Harrell to Cederberg, J.C., and G.C., and David.

59.     Georgia wished Bruce to serve as executor to her estate and to ensure her intentions were carried through.

60.     Initially Harrell agreed to assign the life insurance proceeds due under the Policy to Cederberg to effect Georgia's intent but later refused to sign a formal assignment of proceeds.

61.     There exists a substantial controversy of sufficient immediacy and reality to warranty the issuance of a declaratory judgment.

62.     A judicial declaration is necessary and appropriate to ascertain the parties' rights under the Policy and to the proceeds of the policy.

63.     Plaintiffs are entitled to a declaratory judgment that they are the proper beneficiaries of Georgia's policy.

## COUNT II—CONSTRUCTIVE TRUST

64.     Plaintiffs restate and re-allege all allegations in Paragraphs 1 through 63.

65.     Georgia intended for the Policy proceeds to benefit Cederberg, J.C., and G.C., and David.

66.     Georgia created an ad hoc estate plan expressing her intent for the disposition of

the Policy's proceeds.

67.　　Georgia's ad hoc estate plan was for Cederberg, J.C., and G.C., and David to receive and benefit from the Policy's proceeds.

68.　　Georgia's intent was not for Harrell to take the Policy's $500,000 proceeds for himself.

69.　　Georgia entrusted Harrell with trust and confidence to use the Policy's $500,000 proceeds for the benefit of Cederberg, J.C., and G.C., and David.

70.　　Harrell has an equitable duty to honor Georgia's intent that Cederberg, J.C., and G.C., and David receive and benefit from the Policy's proceeds.

71.　　Harrell is abusing the trust and confidence Georgia bestowed him, refusing to honor Georgia's wishes and seeking to take the Policy's $500,000 proceeds for himself.

72.　　It would be morally wrong and contrary to Georgia's clear expressed intent for Harrell to take the Policy's $500,000 proceeds for himself.

73.　　Harrell would be unjustly enriched if he were allowed to take the Policy's $500,000 proceeds for himself.

74.　　The Court should impose a constructive trust on the Policy's proceeds for the benefit of Cederberg, J.C., and G.C., and David.

## COUNT III – BREACH OF CONTRACT

75.　　Plaintiffs restate and re-allege all allegations in Paragraphs 1 through 73.

76.　　Bruce Harrell and Brian Harrell entered into a contract whereby Brian Harrell agreed to assign the proceeds of life insurance policy to Michael Cederberg in exchange for Bruce Harrell arranging for and paying attorney Ryan Benson to draft the assignment documents.

77.　　The contract was enforceable.

78.     The contract was supported by consideration.

79.     Bruce Harrell performed the contract by arranging for attorney Ryan Benson to draft the assignment documents.

80.     Attorney Ryan Benson drafted the assignment documents.

81.     Brian Harrell breached the contract by failing to assign the insurance proceeds.

82.     Bruce Harrell is entitled to specific performance of the contract.

83.     Alternatively, Defendant Brian Harrell's breach of contract has caused damages to Plaintiffs in the amount of $500,000.00 with the exact amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the court grant the following relief:

1.      Ordering Judgment against Defendant Harrell to include Plaintiffs' costs, disbursements and attorney fees incurred herein;

2.      Ordering judgment declaring Cederberg, J.C., and G.C., and David the proper beneficiaries under the Policy or ordering specific performance of the contract between Bruce Harrell and Defendant Harrell;

3.      An order requiring Farmers to pay the life insurance benefits due under the Policy to the clerk of the United States District Court for the District of Minnesota pending further Order of the Court.

4.      Alternatively, a judgment against Brian Harrell in the amount of $500,000.00 for breach of contract.

5.      Alternatively, an order establishing a constructive trust in the insurance proceeds for the benefit of Cederberg, J.C., and G.C., and David consistent with Georgia Cederberg's intent.

6.    For any further relief that the Court deems just and equitable.

**JURY DEMAND**

Plaintiffs Michael D. Cederberg, David Cederberg, and Bruce Harrell hereby demand a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

Respectfully submitted,

**MORRISON SUND PLLC**

Dated:  February 28, 2019

The undersigned hereby acknowledges that sanctions may be awarded pursuant to Minn. Stat. §549.211.

*/s/ Ryan R. Dreyer*

*/s/ Ryan R. Dreyer*
Ryan R. Dreyer (0332252)
Jeffrey R. Underhill (0390966)
5125 County Road 101, Suite 200
Minnetonka, MN  55345
P:  (952) 975-0050
F:  (952) 975-0058
E:  rdreyer@morrisonsund.com
    junderhill@morrisonsund.com

***ATTORNEYS FOR PLAINTIFFS
MICHAEL D. CEDERBERG, DAVID
CEDERBERG, AND BRUCE HARRELL***